All right. Mr. Larson, you have also reserved two minutes of time for rebuttal. I see you've taken off your mask, and that's fine, of course. So the floor is yours. Thank you, Your Honor, and good morning, everyone. Matt Larson of the Federal Defenders for Mr. Young. There are a few issues in this case. If Your Honors are interested in any one in particular, I can address it now, or I can just launch into the certified issues. Well, launch. Launch away. We're not shy. We'll interrupt if we think appropriate. Well, actually, I do have a question off the bat. Since you invited, I'm happy to give you time to just talk for a while before asking it. But suppose we agree that the Section 922G conviction should be vacated. Why wouldn't the relief be simply to vacate it, just knock it out? It's a concurrent sentence that is by far the least serious of all the things that are there in the record. Why would there be any expectation of a resentencing? Because in this 2255 case, the district court has broad, flexible, remedial authority to do whatever law and justice require. That's what the statutes say. That's what the Gordill's case says. More flexibility and more discretion generally than even on direct review. So if Judge Seibel were to agree, or if Your Honors were to agree, that the 922 conviction has to go out, the case would then go back to the district judge, and she would assess whether further proceedings are warranted in the interests of law and justice. Two large changes have happened since this case went to trial. Number one, the mandatory minimum, which the judge had to impose and did impose, has gone from 65 years to 20 years. Number two, 14 and a half years have passed since Mr. Young has been arrested and been in jail. The district court has heard nothing about those 14 and a half years. But why is that? You know, I mean, the reason normally to allow a complete resentencing is that sentencing packages are constructed a certain way, and sometimes you can tell that if you remove one brick, the whole thing would have been different. I just don't see any rational reason to think that if this case had gone down the way the Supreme Court now thinks it should, and if, and this is another large assumption, it would be a harmful error because had the court known that there was a mens rea attaching to whether you were a felon, there would have been different evidence. But let's assume that it would have led to an acquittal on that particular charge. What is the possible basis for thinking that it would be fair and appropriate to undo all the other convictions, vacate the entire sentence and have a complete do-over? Because that might be nice because then we would be, we could do that with anybody. I mean, it seems odd to use this as the excuse or the predicate for something that somebody else who had the exact same case where the government had chosen not to bring this particular charge and wound up with the exact same sentence that has now been, you know, would be different today, or at least the parameters would be different today, gets nothing. But this guy would get something because of this sort of tag-on sentence. It's a little hard for me to see the logic of that. Well, let me try to explain. As Your Honor alluded to earlier, the sentence package doctrine. Normally on direct review, if one conviction is knocked out, the normal course is to send the case back for de novo resentencing to see if the district judge wants to adjust the terms on the other counts to account for the one sentence that has been vacated. That counsel, I'm afraid I don't get there because I'm stuck with relation back. And I really can't see how the rehab thing relates back to the Johnson type of arguments. I mean, in terms of giving notice as to what was going on, they're completely different things. And, you know, that may be technical, but we do have to find that it is timely. And I don't quite see how we can do that in a situation like this where the two things have really very little to do with each other. Well, the same set of events, but have nothing to do with each other, and where it's not realistic to say that the rehab thing couldn't be argued. After all, I know there are other circuits, but in our circuits, there were some reorders which said, one, it's open, and two, rehab has considerable force to it. So I don't get to the interesting, difficult question that Judge Lynch asks. Can you help me over that? Yes. Let me speak to relation back either right now or – No, go ahead. All right. Relation back, yes, Your Honor. The closest this case is to is the Tiller case, and this is what we talk about in our briefs. In Tiller, a gentleman was killed while working for a railroad. His widow came in, and she first alleged, all right, these particular acts of the railroad violated this particular federal law. She then came in later and said, these different acts of the railroad violated a different federal law. The Supreme Court explained that that later claim did relate back to the first one, even though new legal theories were asserted and new facts were also pled, because there was only one episode in suit, only one general occurrence, and that was the death of her husband at the railroad. Here, we have one episode in suit. We have Mr. Young's possession of a gun on January 14, 2008. Our first claim was that that didn't violate 924C because the underlying offense, robbery, was not a crime of violence. Our claim now is that gun possession did not violate 922G because the requisite knowledge was neither alleged nor proved. But does that really work as an analogy? Rule 15, granted, doesn't, like many civil rules, doesn't really map that well onto habeas. It's just that habeas is conceptually civil, and we've got to deal with it. But in the typical civil case, the idea that you have one accident where somebody is injured and there can be multiple theories and multiple factual attributes of that episode that might come to bear depending on what legal theory you use, the defendant is unnoticed that they're getting sued over this railroad accident, and that's that. That makes a lot of sense to me. But here, it's not so much a question of the underlying crimes. We're not asking, can these different charges be joined in the same indictment? Or, and you might be taking a different view of this to happen, the government brings one set of charges, and then after the statute of limitations has run, comes up with another theory and pulls it in and says, oh, it should be laid back.  But here, you're attacking two different convictions, really. That seems to me to be part of what's problematic here. There's this 924C charge, which is one kind of charge and raises one set of legal issues, and then there's an entirely different thing that comes up under a different charge. So why do we look to the underlying crime rather than the underlying causes of action? What we look to, Your Honor, is the conduct, transaction, or occurrence at issue under the rule. Now, in Tiller, the allegation essentially was the railroad's conduct violated two different Federal laws. Our claim here is that Mr. Young's conduct violated neither of two Federal laws. And I would grant that this is novel. This is new. This is not the usual how it fits into a civil proceeding, Rule 15 litigation. I would grant that. But just because it's novel and unusual doesn't mean it fits within the rule. And I still have problems with an analogy to a civil torts case and this. And it may be that I'm too much of a tortsnick, and so I always see torts as involving every possible argument and so on and really am not a criminal law person. But it seems to me they're quite different, so that we can't make the jump that you asked us to make that easily. But I think there should be some kind of link between the two crimes. Well, if I may, I would say I agree, Your Honor. Yes, this is novel, not the usual case. But that doesn't mean it doesn't fit within the language of the rule. That's what we look to, the text of the rule. It says an amendment to a pleading relates back to the original when the amendment asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading. Here, the conduct, the occurrence, is Mr. Young's possession of a gun that night. Our first claim was that it didn't violate one law. Our second claim was that it doesn't violate another. Just as there were two different laws at issue in Tiller, there are two different laws at issue here. And the purpose, this is a case from the Southern District, quoting the Wright and Miller treatise. The purpose of Rule 15 is to provide maximum opportunity for each claim to be cited on the merits rather than procedural technicalities. To this end, the rule is to be liberally construed. Yes, this is not the normal case. It is a bit novel. But it fits within the language of the rule. And there is a link of sorts, and it's the same gun. Same gun, same possession, same date. Same guy, exactly the same thing. And it's not a new fact, really. You know, we're not — we're not — the new thing we're relying on is Rahaf. It's a new ruling. But why not? But why are you or why is your client absolved from appealing that in the first instance? This was one of the few circuits that hadn't gone the other way that Rahaf ultimately did. So it clearly was an open question here. So why did your client get a pass on that? We do because of what the Supreme Court said in Reed v. Ross, Your Honor. The rule that we're relying on for cause, for showing cause, is the rule set out in that case, which says when the Supreme Court overturns a longstanding and widespread practice to which the court had not spoken but which a near-unanimous body of lower court authority had expressly approved. Here, 11 of the 11 circuits that considered a Rahaf claim before Rahaf rejected it. This court had not weighed in. But the Ross rule, which — But we did. We did weigh in. In one case, we said it was open, and we also said we had — that argument has considerable force so that our circuit wasn't only open, but we had invited argument. The case I'm familiar with, Your Honor, is the Reed case from 2010 that the government — There were summary orders all over. I mean — In Reed from 2010, this court said we're not going to find plain error here because all of the other circuit courts have unanimously answered this question in the negative. I'm not familiar with Your Honor's — with the case Your Honor is referring to that said it's potentially encouraging this argument. But the point here is not could the argument have been raised. That's not the question. The question is whether this scenario fits within the rule that's described in the Reed case. And the Reed case says where there's a near-unanimous body of authority rejecting the claim, you are excused from raising it. That rule, which contemplates a near-unanimous body of authority, necessarily covers the situation here. We have a totally unanimous body of authority rejecting this argument at the time of the trial in 2011. Has any court applying Reed said that, yeah, you don't need to go through the circuit in question, which has not passed on this? District courts, yes. It seems to me that we would want to encourage people to bring arguments before us. That's actually what makes the law not static, right? Well, to answer your question, Your Honor, there are two circuits cited in our briefs that have applied the Reed rule to the Rahaff context. In the Second Circuit, there are district judges — Right, right. But those were circuits that had already prior to — Correct, correct. — or however it's pronounced, gone the other way, right? Correct. So in this circuit, we have district judges who've applied the Reed rule. Judge Caproni, among others, and that's also in our brief. So we have district court rulings that say, yes, in this context, even in the Second Circuit, we're going to apply the Reed rule. And, again, I think the question is not could the argument have been made, because, again, the law also recognizes we don't want to encourage endless, frivolous arguments being raised. That doesn't serve judicial — Well, it's not a frivolous argument. Rahaff made the argument in Watt, right? So — Interestingly enough, I looked at the Rahaff cert petition. The reason they granted it was because of Justice Gorsuch's opinion when he was a Tenth Circuit judge expressing what ultimately came to be the view adopted by the Supreme Court. Now, let's for a moment forget Judge Gorsuch. I'm not saying I want to, but let's just for a moment forget that. Isn't it improper to encourage a circuit that has left it open to come out in a different way so that there is a circuit split, so that the thing will go to the Supreme Court to decide the issue, which they then decided, in fact, in the way they did? They did because of something that Gorsuch had done. But all the more reason to have said, wouldn't it be nice to have the Second Circuit think about it and see if it comes out the other way? And I don't disagree that maybe it would have been nice to make this argument in 2011. But the question here just — I want to be very clear. The question here is whether not doing that in 2011 now means, over a decade later, that the claim is defaulted and barred and cannot be considered on the merits at all. That is the question. The government has identified no case saying that that's what happens. All right. Well, you've reserved two minutes to rebuttal. Let's hear from Mr. Wickstrom now on behalf of the government. Mr. Wickstrom, you may proceed. Good morning, Your Honors. May it please the Court, Assistant United States Attorney Derek Wickstrom, I represent the United States in this appeal. I also represented the United States in opposing the most recent 2255 petition in the district court, but I did not represent the government at trial or in responding to the prior habeas petitions or on the prior appeal. More than a decade ago, Devon Young was convicted on ten separate counts. He now challenges just one, the least serious conviction in his case, which charged him with being a felon in possession of a firearm. In the hopes of undoing the sentences imposed on various other more serious counts, the district court rejected this effort and this court should affirm. I want to jump straight away to the question Judge Lynch raised at the beginning of Mr. Larson's presentation because it's an important one. Even if the court were to hold that the procedural default here were excused by both cause and prejudice, even if the court were to hold that this rehave claim related back to the timely 2015 Johnson claim, the correct remedy here, the easy remedy would be vacator of the felon in possession conviction. And that would be of no benefit whatsoever to Mr. Young because that count, the sentence on that count was concurrent. But counsel, doing that gets us into a terrible mess of no say. When is it that we let the court then reconsider sentences? When is it that we don't? We may have to face it if we have to face it. But if there are other grounds because of which we don't have to face that issue, which is an open and complicated issue, then why should we do that way? I appreciate Judge Lynch asking the question. He's a good academic. But do you really want to go on that route? Get us to think about when it is okay and when it is not. That seems to me awfully difficult. No, Your Honor. And I certainly don't mean to suggest that I think the court should vacate the conviction. I don't. I think the court should simply affirm. And the most straightforward ground is… You think we should affirm on the basis of casseur, basically, say this is essentially the same case as casseur. That's exactly right, Judge Lynch. This is the same case as casseur. And, Judge Calabresi, to your point, casseur says that when the court can reasonably predict that the outcome in this case is not going to result in the relief authorized by 2255, which is released from custody, that the court can, in its discretion, simply affirm under the concurrent sentence doctrine. And here, the court can certainly reasonably conclude that whatever the sentence is on count 15, the only challenged count, vacating it would not have any effect for Mr. Young. And the reason that this court can confidently conclude that is because Judge Seibel has had multiple opportunities to make it clear, and she has done so. At the sentencing in this case, she made clear… I think we hear the point. I guess it's always, to me, seems a little strange that we certify a couple of issues for appeal, and then we would say, ah, it doesn't really matter because there's a different basis to not reach either of the issues we certify. I mean, I don't think it's dispositive. Obviously, you know, one panel does one thing, one panel does another. Am I right that the government did not make a submission in response to the application for the certificate of appealability? You are correct. You know, it's a sort of one-sided thing, and a motions panel, I think, appropriately should take a generous view of, well, maybe we should allow an appeal here. And certifying certain issues just means that all the rest of the issues are ridiculous, but this one, well, maybe. And then it comes for more appropriate full on the merits consideration, and the government is entitled to make what arguments it makes. I don't think we should be encouraging the government to be jumping into these certificate of appealability applications and opposing them all. Thank you, Judge Lynch. I certainly agree. And I'm not faulting the motions panel, which I think Your Honor was on, for issuing the COA here. But this Court has made clear in Garcia v. Lewis, this case wasn't in our briefs, but it's a response to an argument, a waiver argument Mr. Larson raised in his reply. Garcia v. Lewis, 188 F3rd 71 at footnote 2, which appears on page 75. This Court affirmed on a ground as to which the COA was silent because, quote, we see no reason why the certificate should limit what the state may argue on appeal, particularly because if the state were the appellant, it would not have had to secure and thus could not be limited by a certificate of appealability. I don't think anyone is suggesting that we can't go off on another grounds. But getting back to, I think, some of the others that really were the subject of the briefing for a moment. So procedural default. I guess I'd like to hear your response to that. Yes, Your Honor. So with respect to procedural default, there is neither cause nor prejudice here, excusing the default. In Boosley, which was decided after the Reed case on which Mr. Larson relies, the Supreme Court distinguished between novelty on the one hand and futility on the other hand. Citing Reed, which the Boosley Court said that cause can excuse procedural default where a claim is so novel that its legal basis was not reasonably available to counsel. But this Rahafe issue is not that. This is not an availability issue. This issue was being litigated regularly, including in the Reed case in the circuit shortly before Mr. Young's trial, including in every other court of appeals, including in multiple district courts, some of which we cite in our briefs. This issue was certainly available. And this court has likened this novelty or futility exception that can generate cause to availability. Here the claim was available. And as the panel pointed out during Mr. Larson's argument, it was particularly available in this circuit where it was expressly an open question. But are you in arguing this, conceding that it would relate back if there were cause? I am not, Your Honor. The claim certainly doesn't relate back. And I think the issues are completely separate. So to turn to the relation back issue, Mr. Larson says that the most analogous case is Tiller. I'll get to Tiller in a second. But Male is far more analogous and I think makes clear that this is not novel. The Male court made clear that in habeas, the focus of the relation back analysis is on the claims and not on the underlying criminal convictions. That has to be right because if it's not, then a number of this court's post-Male precedents are wrongly decided. This court has repeatedly been presented with timely habeas petitions challenging each and every count of conviction and has rejected relation back for untimely claims that likewise challenged each and every count of conviction. And those cases are wrongly decided if the focus is on the facts underlying the convictions rather than the facts underlying the claims. But the Supreme Court made clear in Male that that's not right. They said, quote, the argument made by Felix, that's the habeas petitioner in that case, and embraced by the dissent that all manner of factually and temporally unrelated conduct may be raised after the statute of limitations has run and relate back so long as the new and originally pleaded claims challenge the same conviction. The court expressly rejected that argument in Male. And that's the exact mode of analysis that Mr. Larson proposes here. So it's foreclosed by Male. It's foreclosed by this court's post-Male precedents. It cannot be that if you challenge a single count in a timely habeas that you can thereafter challenge it on any other ground, regardless of the facts underpinning the claim, on an untimely basis because you'll get the benefit of Rule 15. Now, turning briefly to Tiller, Tiller doesn't cast any doubt on this conclusion. In the Tiller case, the Tiller case was a wrongful death suit in which negligent claims were timely brought based on a rail yard's negligence. I think the negligence included failing to put a light on a train that crushed the victim. And the untimely claims were regulation-based. They were regulatory claims that were based on the same allegations of negligence. I think there was a regulation requiring there to be a light on the train. And so the same fact formed the basis for both a negligence claim and a regulatory claim. That does not cast any doubt on the application of Male to this case. Unless the court has any additional questions, I'll otherwise rest on the government's brief. And I thank the court and ask that the court affirm. Okay, thank you, Mr. Wickstrom. All right, Mr. Larson, you've got two minutes of rebuttal. Thanks, Your Honor. Male v. Felix, a completely different case because there one claim regarded one witness's interrogation by the police at one time. And then the second claim regarded the defendant's own interrogation at a different time and place. The Supreme Court said that does not relate back. But the convictions, they were challenging the same underlying events, the same trial involving the same crime, right? Well, the argument there from the petitioner that the Ninth Circuit agreed with was that anything that happened during the trial relates back. So I can bring anything relevant to the trial or the conviction, the sentence, anything. So why isn't your claim the same? Because you're basically saying any challenge that concerns the same underlying events that were the subject of the trial, and surely whether the defendant's Miranda rights are violated and whether there's prosecutorial misconduct in coaching some other witness, all of that is still all about the same underlying trial, the same underlying events of the crimes. The trial concerned years of conduct. We're talking about one occurrence. We're talking about the possession of a gun on January 14, 2008. That's one occurrence in a years-long parade of horribles, basically, that came up at the trial. We're zeroing in on one thing. We're saying it doesn't violate this one law just as it doesn't violate the other. Just as in Tiller, this conduct of the railroad, it violates one law, it also violates another based on these new facts. This is analogous to Tiller, and it relates back to that reason. To speak to cause, again, the rule in Reed has not been abolished by Boozley. We cite cases in our brief post-Boozley from many circuits citing the Reed v. Ross rule. When there's a near-unanimous body of authority, you don't have to make the claim. A near-unanimous body of authority necessarily covers a unanimous body of authority, which is what we have here. 11 of 11 circuits rejecting the Rahaf claim. Most of them in the 90s, Your Honors. This trial happened in 2011, but I think all but two of the circuits had foreclosed this issue in the 90s. This was not percolating in the way that the government suggests. This was foreclosed everywhere. And the fact that it could have been raised in this circuit, the argument, does not mean that it's now procedurally defaulted on habeas. Lastly, Kassir. Excuse me. Kassir, there were two unchallenged life sentences. So this court said, why are we going to bother looking at one of the counts that has a 20-year sentence? You're not even challenging the fact that you're going to die in prison. That is not this case. If this goes back to the district court, she will have the discretion to take a hard second look. The mandatory minimum is not 65 years, it's 20. And 15 years have gone by since the case. She will then have a second chance to decide whether this individual, who was a teenager, afraid for his own life at the time, really should die in prison for that split-second mistake. All right. Well, thank you, Mr. Larson. Thank you, Mr. Wickstrom. We were a reserved decision, but very well argued. Thanks. Thank you, Your Honor.